Tommie DUNBAR, Plaintiff in Error,

v.

AMERICAN AIRLINES, INC., a Corporation, F. W. Mills and Sidney Roth, Defendants in Error.

No. 39643.

Supreme Court of Oklahoma.

Oct. 2, 1962.

Rehearing Denied Nov. 20, 1962.

John L. Ward, Jr., Thos. D. Frasier, by Robert G. Brown, Tulsa, for plaintiff in error.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for defendants in error.

JOHNSON, Justice.

This is an appeal from the District Court of Tulsa County, Oklahoma. The plaintiff, plaintiff in error here, sued the defendant airline and pilots for the alleged negligent operation of a plane upon which plaintiff was a passenger resulting in personal injury to her. From a jury verdict in favor of the defendants, the plaintiff appeals.

The plaintiff in her petition alleges that she was a fare-paying passenger on the 23rd day of June, 1957, on Flight #201 of the defendant company, enroute from Nashville, Tennessee to Tulsa, Oklahoma; that the individual defendants were the captain and co-pilot on such flight. That this flight departed from Nashville at approximately 12:30 p. m. Central Standard Time. The allegations of negligence were as follows:

"(a) In attempting to fly through a dangerous thunderstorm, when they knew, or in the exercise of ordinary care would have known, that the air within the thunderstorm was turbulent, violent, unstable and unsafe for safe passage.

"(b) By failing to keep proper control of their aircraft once they were inside of the thunderstorm to prevent the same from turning over, and in losing complete control of the aircraft on two occasions.

"(c) Failure to use that degree of care and caution that an ordinarily prudent person would have used under the same, or similar circumstances to avoid the accident and injuries to the plaintiff."

To this petition the defendants filed their answer, alleging the following defenses: 1. Sudden emergency. 2. Unavoidable accident.

Upon the issues thus joined, trial was had to a jury which returned a verdict for the defendants. From order denying a new

trial, the plaintiff appeals and urges reversal upon the following grounds:

1. That the verdict is contrary to the evidence, and the trial court erred in refusing a directed verdict for plaintiff.

2. That the trial court erred in refusing to give requested Instruction No. 1.

3. That the trial court erred in failing to instruct the jury that violation of C.A.A. regulations constituted negligence per se.

4. That the trial court erred in instructing the jury on the theory of "ordinary care."

5. That the trial court erred in giving Instructions Nos. 7 and 8 defining "unavoidable accident" and "sudden emergency."

We shall consider these in order.

■ The first contention, supra, is that the trial court erred in not directing a verdict for plaintiff. For the purpose of considering this contention, we assume that the plaintiff has proven a prima facie case of negligence. The sole question to consider is whether or not the evidence of the defendant raised a sufficient issue of fact to require the submission to the jury. For this purpose we call attention to the evidence of the pilot, Mills, who was in control of the plane at the time of the alleged negligence.

He testified that he had been flying twenty-five years with approximately 20,000 hours in the air; that he had rechecked the weather at Nashville and there was only one thunderstorm reported which was in the vicinity of Ft. Smith; that this was too far south to be on the regular course to Tulsa. He testified that he had flown this particular route over long periods and had encountered what appeared to be similar wind conditions many times; that he was flying on this particular day just as he had on many other occasions, and conditions looked the same to him as on other trips. He further testified that there was no lightning, no thunder, and no hail; that all of a sudden the plane "started down at an alarming rate of speed." He testified that he finally brought it under control; that the plane did not turn over at any time, and that it appeared clear before he went into this drop. He stated that they were not permitted to fly over 24,000 feet, and that he could not go up when the downdraft was encountered.

The foregoing is a very brief summary of the pilot's testimony. We are of the opinion that there was sufficient issue of fact created by the above testimony to make the question of negligence one for the jury.

■ Secondly, the plaintiff asserts error in the court's refusal to give her requested Instruction No. 1 which reads as follows:

"PLAINTIFF'S REQUESTED
INSTRUCTION NUM-
BER 1

"Gentlemen of the jury you are instructed if it is possible to determine or even suspect that under certain conditions downdrafts are likely or possible, it would appear to be the duty of a prudent operator to take whatever precautions are necessary or available to guard against dangerous consequences. * * *"

In support of the above, the plaintiff cites Cudney v. Braniff, (Mo.), 300 S.W.2d 412, and takes the above language from the body of that opinion, which does not deal with instructions. We are of the opinion that the requested instruction goes too far in the use of the word "suspect." One of the definitions adopted by the Kansas court is:

"* * * It need not involve knowledge or belief or likelihood." Cheek v. Missouri, K. & T. Ry. Co., 89 Kan. 247, 131 P. 617.

We believe that such a rule is not the proper one for the operation of an airplane.

We are of the opinion and hold that the court's Instruction No. 5 embodied all of the essential elements defining the conditions under which liability attaches.

The plaintiff's third contention is that defendants were negligent in the alleged violation of the C.A.A. regulations. In this connection, it should be observed that this question was apparently never raised in the trial court. There was no pleading nor requested instruction covering the provisions of the regulations. It is true that the court will take judicial notice of these regulations since they have the force of statutes. See Parker v. James E. Granger, 4 Cal.2d 668, 52 P.2d 226, wherein the fifth headnote reads:

"Court takes judicial knowledge of official acts and regulations of department of federal government, and evidence thereof is not required."

But it is also well established that there must be allegations in the pleadings setting forth the existence of conditions upon which the application of the regulations depend. Such regulations are on a par with a statute, and as said in connection with statutes:

"Those who attempt to enforce a statute must allege and prove that all prerequisite conditions have been complied with or that such conditions exist for the effective operation of the statute." Liquor Store v. Continental Distilling Corp., (Fla.) 40 So.2d 371.

"Any one who seeks to enforce a statutory right or liability must, by allegation and proof, bring himself within its provisions." Universal Credit Co., Inc. v. Citizens State Bank of Petersburg, 224 Ind. 1, 64 N.E.2d 28, 168 A.L.R. 352.

See also Rarrick v. Browne et al., 151 Ohio St. 276, 85 N.E.2d 386.

No where in the allegations of the petition, supra, are there allegations bringing the situation within the provisions of the regulations. It is obvious that this theory was neither presented nor considered in the trial court, but it is a new basis for attempted recovery on appeal.

Coming to the plaintiff's fourth contention of error, in order that there may be no misunderstanding concerning the exact language involved in this contention, we quote both Instructions Nos. 4 and 5 in full.

"No. 4.

"The term ordinary care, means that degree of care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances.

"Negligence imports a want of such attention to the nature or probable consequences of an act or omission as a prudent man ordinarily bestows in acting in his own concerns.

"To constitute actionable negligence three elements are necessary and must concur: First, the existence of a duty on the part of the party charged; Second, failure of said party to perform that duty; Third, injury to the party charging the negligence and which proximately results from such failure.

"Before one found guilty of negligence may be held to respond in damages therefor, it must be shown by a preponderance of the evidence that said negligence was the proximate cause of the injury and damage, if any sustained.

"The proximate cause of an injury, as that expression is used in these instructions, means the cause which in natural and continuous sequence, without the intervention of any other cause, produces the injury, and without which the result would not have happened.

"For an act of negligence to be deemed the proximate cause of an injury, the injury sustained as a result of the act must be shown to have been such as could have been reasonably foreseen by a prudent person in the exercise of due care, although it might not have been specifically contemplated or anticipated.

"GIVEN,

"EXCEPTED TO BY PLAINTIFF,

"EXCEPTION ALLOWED, LESLIE WEBB, JUDGE."

"No. 5.

"You are instructed that a carrier for hire such as the defendant, American Airlines, Inc., owes to passengers using its airplanes the utmost care and diligence for their safe carriage and must provide everything necessary therefor and exercise a reasonable degree of skill in the operation of its airplanes, and although a carrier for *hier* is not an insurer of the safety of its passengers, yet it is charged with the highest degree of care to prevent injury to its passengers.

"GIVEN, EXCEPTED TO BY PLAINTIFF,

"EXCEPTION ALLOWED,

"LESLIE WEBB, JUDGE."

It will be observed that Instruction No. 4 contains in the first paragraph a definition of ordinary care. *Nowhere in this instruction is the jury directed to apply this criterion to the case at bar.* Instruction No. 5, which correctly defines the duty of a carrier to its passengers, does direct the application of this standard to the case under consideration. In other words, the definition contained in No. 4 is mere surplusage.

■ In the case of Buck Creek Coal Mining Co. v. Johnson, 198 Okl. 664, 181 P.2d 1003, this court said in the first paragraph of the syllabus:

"An instruction which states a correct proposition of law, but which has no application to the issue involved or the proof, will not warrant a reversal of the judgment, unless it is apparent that such instruction misled the jury."

In view of the positive instruction to apply No. 5 and the lack of any such mandate in regard to No. 4, we think the above rule applicable and no ground for reversal. See 22 O.S.1961, § 1068.

In her fifth contention of error the plaintiff makes three complaints concerning Instructions Nos. 7 and 8. First, that there was no evidence justifying the giving of these instructions. Second, that the instructions contained directions concerning what a "reasonably prudent person" would have done rather than the duty required of a carrier for hire. Third, that a carrier for hire cannot be said to be free from negligence where some other course of action would have been safer.

■ In order that the specific contentions may be understood, we quote Instructions Nos. 7 and 8 as follows:

"No. 7.

"You are further instructed that by common acceptance the term unavoidable accident means a casualty which happens when all the means which common prudence suggest have been used to prevent it.

"GIVEN

"EXCEPTED TO BY PLAINTIFF

"EXCEPTION ALLOWED, LESLIE WEBB, JUDGE."

"No. 8.

"Where a person finds himself confronted with a sudden emergency, which was not brought about by his own negligence or want of care, such person has the legal right to do what appears to him at the time he should do, so long as he acts in a reasonably prudent manner as any other person in the same position would have done under like or similar circumstances, to avoid an injury, and if he does so act, he will not be deemed to have been negligent even though it might afterwards be apparent that some other course of action would have been safer.

"GIVEN

"EXCEPTED TO BY PLAINTIFF

"EXCEPTION ALLOWED, LESLIE WEBB, JUDGE."

■ In answer to number one above, it is only necessary to refer to our analysis of the evidence under proposition one, supra. As to number two, supra, Instruction No. 8 covers the situation where a sudden

emergency confronts the operator. We think the proper rule is expressed in the text of 13 C.J.S. Carriers § 751, page 1412, where it is said:

"Where a carrier's employee is confronted with a sudden emergency, the fact that he is obliged to act quickly and without a chance for deliberation must be taken into account, and *he is not* held to the same degree of care that he would otherwise be required to exercise in the absence of such emergency, but must exercise only such care as an ordinarily prudent person would exercise under like circumstances and conditions, * * *." (Emphasis ours)

We therefore hold Instruction No. 8 to correctly state the law.

■ In connection with Instruction No. 7, an unavoidable accident is defined as "a casualty which happens when all the means which common prudence suggest have been used to prevent it." This and other instructions given are probably faulty in not advising the jury to find for the defendant in case of "unavoidable accident." However, this would be to plaintiff's advantage and no ground for reversal. Assuming that the jury supplied the missing direction, we are not prepared to say that this instruction is faulty. It specifically limits the nonliability to the situation "when all the means which common prudence suggest have been used to prevent it." The construction of this phraseology must be interpreted in the light of Instruction No. 5 where the duty of the operator is defined as "the utmost care and diligence" and "the highest degree of care to prevent injury to its passengers." This duty of construing the instructions is specifically imposed by Instruction No. 14, where the court said, "You must consider the instructions as a whole and not a part to the exclusion of the rest."

■ The third contention urged against Instructions Nos. 7 and 8 is answered by the quotation from R.C.L. found upon page

367 of 83 A.L.R. where the rule is thus stated:

"One who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." 20 R.C.L. 29, Sec. 22.

The authorities cited on such page 367 support this rule.

In passing, this being the first opinion of this court dealing with the precise situation involved, we quote with approval the following from page 363 of 83 A.L.R.:

"* * * In determining whether or not defendant aeroplane carrier of passengers, acting through its pilot, exercised 'the highest degree of care consistent with the practical operation of the agency which is used for the safety of those who may be passengers at the time,' the jury is to keep in mind the agency which was being employed, —not a lumber wagon, or a vessel on water, or an automobile, but an aeroplane. Foot v. Northwest Airways (1930; (Fed.) U.S.D.C.D. Minn. 3d Div. (1931) U.S. Av.R. 66, supra (effect of instruction by trial court—defendant a common carrier, it would seem, although no statement as to this). 'When you come to determine what is the highest degree of practical care and diligence,' as applied to the facts of a particular case, 'you will have to remember that in dealing with travel by aeroplane you are dealing with a kind of transportation which is navigating a new element. There are many more factors which are unknown, unforseeable, and not preventable arising in connection with an aeroplane journey than with a railroad journey. As an example, the weather is a most important and vital consideration in the piloting and management of aeroplanes. * * * Now, within certain limits, of course, the weather can be foreseen. It cannot be controlled, but it can be

foreseen and guarded against and avoided, but even then only within certain limits. Gusts of wind, sudden snow squally, fogs, and rain, and other frequently occurring phenomena, often come up so quickly that no human foresight can possibly take any precautions against them. And there are various other matters, such as the condition of the ground, or snow on the ground, which all must be considered in determining what is the highest degree of care which can be exacted of a pilot of an aeroplane.' " * * *

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, HALLEY, JACKSON and IRWIN, JJ., concur.

BERRY, J., concurs in result.